STOCKLEY *v.* SCHOOL DISTRICT NO. 1 OF PORTAGE
TOWNSHIP.

1. MASTER AND SERVANT—EMPLOYER'S REPORT OF ACCIDENT PRIMA
FACIE EVIDENCE OF ACCIDENT.

An employer's report of an accident to the department of
labor and industry, where there was full opportunity to
investigate the facts, is *prima facie* evidence of the facts
stated, and that the accident occurred as reported, but
whether or not it furnishes *prima facie* evidence that the
accident arose out of and in the course of employment,
is a question of law.[1]

2. SAME—INJURY TO TEACHER ON THE WAY TO TEACHERS' INSTI-
TUTE—OUT OF AND IN COURSE OF EMPLOYMENT.

Where a school teacher was directed by the superintend-
ent of schools to attend a teachers' institute in a neighbor-
ing city on a certain day held in pursuance of a statute
which provides that teachers so attending shall not for-
feit their wages as teachers during said time (2 Comp.
Laws 1915, § 5973), and she was accidentally killed while
on her way to attend said institute, the finding of the
department that the accident arose out of and in the
course of her employment was justified.[2]

3. SAME — EMPLOYER LIABLE FOR EMPLOYEE INJURED WHILE ON
SPECIAL DUTY ALTHOUGH AWAY FROM PLACE OF EMPLOYMENT.

The rule that, when an employee is injured away from
his place of employment and employer's premises while
going to or returning from work the injury does not arise
out of his employment is not applicable to the present
case, which comes under the exception that where the
employee was shown to be doing a special service in the
interest of and under the direction of his employer, the
latter is liable.[3]

Certiorari to Department of Labor and Industry.
Submitted October 22, 1924.   (Docket No. 121.)   De-
cided July 16, 1925.

[1]Workmen's Compensation Acts, C. J. §§ 63 (Anno), 113; [2]Id.,
C. J. §§ 63, 114; [3]Id., C. J. § 68.
On injuries received by employee while going to and from
work, see notes in L. R. A. 1916A, 331; L. R. A. 1917D, 119;
L. R. A. 1918F, 907.

Florence Stockley, guardian of Edward B. Harmon, an infant, presented her claim for compensation against school district No. 1 of Portage Township for the accidental death of Eva S. Harmon in defendant's employ. From an order awarding compensation, defendant and the Hartford Accident Indemnity Company, insurer, bring certiorari. Affirmed.

*Ray Derham*, for appellants.

*Rees, Robinson & Petermann*, for appellee.

STEERE, J. Defendants appeal by certiorari from an order of the commission of the department of labor and industry awarding compensation for the accidental death of Mrs. Eva Harmon on November 5, 1923, resulting from a collision of the automobile in which she was riding with an interurban electric railway car at a highway crossing between the city of Hancock and Calumet, in Houghton county, Michigan. Plaintiff, Florence Stockley, is a sister of deceased and guardian of her son, Edward Harmon, a minor then 9 years of age and wholly dependent on his mother for support. The two sisters were school teachers living in Hancock. Miss Stockley taught in the Hancock school and Mrs. Harmon was employed as a teacher in the high school at Houghton, which is located directly across Portage lake to the west, a bridge connecting the two municipalities. The county school commissioner of Houghton county had received instructions from the State superintendent of public instruction to advertise an "inspiration institute" for the teachers of Houghton and Keweenaw counties to be held in the high school building at Calumet on Monday, November 5, 1923. This he did by publishing a notice in the newspapers of the district which concluded as follows:

"State Superintendent Thomas E. Johnson will be present as conductor. All teachers are urged to be present. A cordial invitation is extended to all in-

terested in school, especially to school officers and parents, to attend both morning and afternoon sessions.      Signed, J. BETTENS, Commissioner of schools."

Professor John E. Erickson was superintendent of "School District No. 1 of Portage township," which included the schools of Houghton, and had control of all teachers in that district.      He issued a bulletin on October 23, 1923, copies of which were sent to the teachers in his district, a paragraph of which reads as follows:

"Schools of Portage township will be closed Monday, November 5th, to allow teachers to attend the county institute which will be held at Calumet on that date. There will be morning and afternoon sessions, and all teachers are expected to attend.      For time and place watch the newspapers."

Superintendent Erickson testified that he instructed all the teachers under him to attend the institute and attended it himself; they were all required to go, were paid for so doing as though teaching and every teacher went every year unless detained on account of sickness; refusal to go would reflect on a teacher's professional standing, she would receive no pay for that day and personally he "would not feel like recommending her for a position the following year."      The superintendent of the Hancock schools gave like instructions to the teachers under him, and testified to like effect as to the result of failure to attend.

On the morning of November 5, 1923, the two sisters left Hancock in a Ford sedan they jointly owned for Calumet to attend the institute, accompanied by Mrs. Munroe, a teacher in the Houghton school who Mrs. Harmon had invited to ride with them.      They first drove across Portage lake to Houghton for Mrs. Munroe and then started back through Hancock for Calumet by the main highway between the two places,

a distance of between 12 and 13 miles.   Miss Stockley drove the car while Mrs. Harmon and Mrs. Munroe occupied the back seat.   At a point about a mile and a half from Calumet where the highway crosses an interurban railway track their auto collided with an electric interurban car, killing Mrs. Munroe and Mrs. Harmon.   Miss Stockley was severely injured but recovered.   There was a clear view of the approaching electric car for several hundred feet.   One auto driver had seen the car and stopped, but Miss Stockley drove past this standing automobile and onto the track just in time to be struck by it.   Of the collision she testified:

"The last I remember is that we made Quincy Hill on high and that I remarked the engine never worked better and that I would drive slowly so that we would not arrive at Calumet early.   I have been told that I was driving slowly just before the accident; that I passed a car parked on the right side of the road; and that a Studebaker car passed on my left.   I did not see the street car which came from my right off a trestle which ends at the crossing.   I heard no exclamation from the others and don't think they realized they were struck.   *   *   *   I am very familiar with the crossing where the accident occurred. There is a clear view of the trestle for some distance. The day was clear."

On November 6, 1923, Superintendent Erickson reported the accident to the department of labor and industry on one of its blank forms entitled "report of compensable accident," naming "School District No. 1 of Portage township" as the employer.   "By John E. Erickson, supt. of schools."   He testified that as superintendent of the district he participated in hiring deceased and had charge of all teachers in the district. Mrs. Harmon's contract to teach that year was signed, "District Board of School Number one of Portage Township, by W. F. Miller, director.   J. T. Finnigan, moderator.   Eva S. Harmon, teacher."

On December 3, 1923, a "supplemental report of fatal accident" was made to the commission on one of its forms, signed "School District No. 1, Portage Twp. by W. F. Miller, secretary."    A claim for compensation was thereafter made, and filed with the commission.    Liability was denied and hearing had before a deputy commissioner who made an award for the maximum amount authorized under the industrial accident law for death, which was affirmed on appeal to the full commission.

The controlling issue presented here is whether the facts shown furnish any legal evidential support, direct or inferential, for the conclusion of the commission that the fatal accident which befell deceased arose out of and in the course of her employment as a teacher.    Defendants contend that it does not, and their counsel particularly attacks the resort of the commission in support of its finding to the theory that the reports of the employer are an admission—

"and may be taken as *prima facie* evidence that deceased was an employee of respondent employer and that she sustained an accidental injury which arose out of and in the course of her employment."

This court has held in cases cited by the commission that an employer's report, where there was full opportunity to investigate the facts, is *prima facie* evidence of the facts stated and that the accident occurred as reported.    It may or may not as a proposition of law furnish *prima facie* evidence that the accident arose out of and in the course of the injured party's employment, which is the issue of law involved here.    The purpose of requiring a report of the accident is to give the commission timely notice and opportunity to investigate and determine liability if denied by the employer.    If important here, there is force in defendants' contention that it does not appear Superintendent Erickson had authority to make the

report he made and bind the school district by it.    But a report was also made by the district, signed officially by its secretary who was also its moderator and whose authority is not questioned.    The reports are in harmony with the undisputed facts so far as they go, and of little aid or importance in this inquiry.

It is shown without dispute that deceased, a qualified teacher holding a life certificate, was in defendant's employ as teacher in the Houghton high school at the time of the accident, which occurred at about 9 a. m. while she was on her way from Houghton to Calumet to attend a teachers' institute, as she had been directed to do by the superintendent in charge of the Houghton schools, which were closed that day because the teaching force was required to be in attendance at the institute.

It is strenuously contended for appellants that deceased's death neither arose out of nor in the course of her employment because it was limited by her contract of hiring to teaching in the high school at Houghton, and even if her contract should be construed as inferentially including attending the teachers' institute at Calumet, she was not injured while in attendance, but on a public highway when going from her home to the place where the convention was to be held.    Teachers' institutes are authorized by statute in this State in connection with our public school system.    The State superintendent of public instruction is required to annually appoint the time and place of holding one in each county, except as certain conditions may allow him in his discretion to hold an institute for the benefit of two or more adjoining counties.    While the act itself does not in express terms make attendance mandatory, it recognizes so doing as compensable service in the line of employment as a teacher, requires that the superintendent of public instruction or his duly appointed conductor shall give

each attending teacher a certificate of attendance, recognizes the right to close the public schools for that purpose and provides that each teacher so doing "shall not forfeit his or her wages as teacher during such time as he or she shall have been in attendance at said institute." 2 Comp. Laws 1915, § 5973.

A teachers' institute in the system of common schools of this country is defined as—

"An assembly of teachers of elementary or district schools, convened by a county superintendent or other school authority, to receive or give normal instruction. The work consists of a brief course of class exercises, lectures, and examinations."—Century Dictionary.

The county commissioner of schools testified among other things that the purpose of their institutes was to inspire the teachers of the county and bring before them subjects of vital interest to the schools, and those institutes had been conducted in that district by the public school authorities under direction of the State superintendent of public instruction for over 30 years. Professor Erickson stated they were held "for inspirational and instructional purposes, so that better work may be done in the schools of the county during the year."

While deceased's contract of hiring does not directly specify as one of her duties attendance at the teachers' institute, it obligates her to faithfully "discharge all duties as such teacher in accordance with the statutes of the State of Michigan, and to observe and enforce all regulations that have been or may be established by the school board," and authorizes her dismissal "for violation of the contract," which by reference includes and is to be construed in harmony with statutory provisions touching that subject.

When this teachers' institute was called in that district as provided for by statute, the Houghton schools were closed on the appointed day, as the law author-

231—Mich.—34.

izes, for the teachers to attend it.   They were timely notified and instructed by the superintendent to attend.   The law impliedly recognizes so attending as a service under their contract equivalent in value to teaching and requires that they be paid accordingly. Under such conditions it can fairly be said that deceased was performing a special duty within the scope of her contract and course of her employment when devoting the day to attending the institute as directed.

It is also contended that even if in the course of her employment deceased's injury did not arise out of it because she had not arrived at, but was only on her way to, the place of holding the institute, in support of which counsel cites decisions to the generally accepted rule that when an employee is injured away from his place of employment and employer's premises while going to or returning from his work the injury does not arise out of his employment.   Various exceptions to that general rule are found, in cases where it is made to appear that the employee although away from his regular place of employment, even before or after customary working hours, was doing some special service or discharging some duty incidental to the nature of his employment in the interest of or under direction of his employer.   Deceased's regular employment, for which she primarily hired, was teaching in the high school of Houghton on her employer's premises, not far from her home.   Attending this legally appointed teachers' institute when directed to do so by the superintendent of schools, while within the scope of her contract, was an unusual and special service which called her to go on a journey away from her place of employment and regular duties.   In their daily school work the teachers were required to be in the school house at Houghton on duty at 8:30 in the morning.   At just what time she left Houghton does not appear, but Professor Erickson testified that he

left Houghton in his automobile at about 8:30 that morning for Calumet, going by the main highway, and reached the place of accident about 9:15 a. m., "almost immediately" after it took place.    The accident occurred during deceased's usual working hours as a teacher, on a day and at a time when but for the schools being closed and teachers required to attend the institute she would have been on duty in the high school building of her employer at Houghton.    The accident occurred during her working hours, but while she was away from there in obedience to her employer's instructions, in performance of a special service incidental to the nature of her employment and within the scope of her contract.    She was not going to or returning from her customary place of employment before or after working hours, but by authority of her employer was going away from her home and place of regular employment on a journey of 12 miles or more, made subject thereby to the hazards of travel, not free to go where she pleased at her own convenience or pleasure, but to a specified place on a special mission in the line of her employment.    The criterion is not necessarily that others are exposed to the same dangers of travel, but whether with reference to the nature of his employment the performance of a special service within the scope of such employment, in the interest of or by direction of his employer, particularly subjects an employee to the added danger out of which the accident arises.

Under the circumstances disclosed by this record we are not prepared to hold the finding of the commission that the accident which befell deceased arose out of and in the course of her employment is destitute of evidential support.

The award will stand.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.