Day, J.
 

 The first question for consideration is whether pr not the Court of Appeals erred in refusing to sustain the motion of Maria Inglish to strike from the files the petition in error of the Industrial Commission.
 

 The record shows that the defendant in the trial court, at the close of all the evidence in the case, made a motion for a directed verdict. This motion was overruled and exception noted.
 

 Upon review in the Court of Appeals, it is unnecessary to have the record show that the motion for a new
 
 *497
 
 trial was made and overruled in the trial court, when the question presented is that there is no evidence in the case to sustain a verdict, the court being only required to apply the law to the facts. This is the holding in the case of
 
 Jacob Laub Baking Co.
 
 v.
 
 Middleton,
 
 118 Ohio St., 106, 160 N. E., 629, the fifth paragraph of the syllabus reciting: “While a motion for a new trial is necessary to determine the weight of the evidence, it is not necessary in the application, by the court, of the law to the facts on a motion for a directed verdict. The defeated party has the right to rest solely on his motion for a directed verdict; and, although he may do so, he is not compelled to ask for a new trial which he may not desire.”
 

 So that whether or not the motion for new trial was filed within the proper statutory period becomes immaterial. The view of the Court of Appeals was that there was no evidence in the record entitling the plaintiff below to recover, and in its opinion, as set forth below, the Court of Appeals says that it was the duty of the trial court to sustain the motion of the defendant for a directed verdict, made at the close of the plaintiff’s testimony and at the close of all the testimony:
 

 ‘ ‘
 
 There is no disputed issue of fact upon any pertinent or important proposition in this case. There is no evidence or deducible inference from the evidence that the injury which caused the decedent’s death was received in the course of or arose out of his employment.
 

 “Such being the fact it was the duty of the trial court to have sustained the motion of the defendant made at the close of the plaintiff’s testimony, and at the close of all the testimony, for a directed verdict.”
 

 Such being the ground of the reversal by the Court of Appeals, in the light of the case of
 
 Jacob Laub Baking Co.
 
 v.
 
 Middleton, supra,
 
 we see no error in the overruling of the motion of the plaintiff in error to strike the petition in error in the Court of Appeals from the files
 

 
 *498
 
 A second question is whether or not the Court of Appeals should have rendered final judgment in favor of the Industrial Commission, as it did.
 

 The Court of Appeals was of opinion that there was no evidence or deducible inference from the evidence that the injury which caused the decedent’s death was received in the course of or arose out of his employment. -Entertaining that view, final judgment was rendered in favor of the Industrial Commission.
 

 True, the facts in this case are not in dispute. The following excerpts from the record of the testimony of W. Gr. Wolfe, superintendent of the Guernsey county schools, discloses the necessity of the decedent carrying his examination papers home and working on them that night:
 

 “Q. How many grades were represented? A. Seven grades out of a possible eight. * * *
 

 “Q. How many recitations does your records show? A. It was necessary to have twenty-nine recitations each day, according to our coünty program, with that number of pupils.
 

 “Q. In this particular school was it one of the duties of Mr. Inglish to give periodical examinations to all his pupils ? A. It was. * * *
 

 “A. It would have been impossible for him to do this work during school hours, that is between nine A. M. and four o’clock P. M., because all their duties would make it impossible for him to find time to do anything other than recitation work. I hardly think it would have been possible to have done the work that he was expected to do, outside of school hours, between four P. M. and six P; M., even though he had remained in the school. In fact, teachers ’ work is not done that way. * * *
 

 “Q. Mr. Wolfe, about the 15th of November, in this altitude it gets dark about what time in the evening? A. I would say at five o’clock, in the building that does not even possess artificial lighting facilities, it would
 
 *499
 
 be impossible to work, perhaps even earlier than that,
 
 *
 
 # #
 

 “Q. Mr. Wolfe, if Mr. Inglish, in November, 1927, as a teacher in the High Hill School, had given an examination, a periodical examination, as required by your course of study, and had withheld recitation from his pupils in order to grade the papers during school hours, would that have been proper conduct under what was expected of him by you and your department? A. It would not. We would not have permitted it. * # #
 

 “Q. Mr. Wolfe, if Mr. Inglish found it impossible to grade these examination papers at school and during school hours, and after school hours, and up to darkness, would he have been expected to grade the papers at his home ? A. He would have been expected to do so.
 

 “Q. Mr. Wolfe, school teachers in schools of this type are not required or expected to maintain lighting facilities and heating facilities at the school building at their own expense, are they? A. They are not. *
 
 *
 
 *
 

 “Q.
 
 Is it the practice of school teachers, responsible to you in this type of school, to grade papers at home? A. Yes, sir.
 

 “Q. Mr. Wolfe, was there a special monthly or periodical examination due at about the 15th of November, 1927? A. There was the second monthly examination.
 

 “Q. Do you know whether Mr. Inglish graded his examination papers promptly? A. My understanding was he always did. I never heard anything to the contrary. * * *
 

 “Q. As a superintendent of teachers in a school room for many years, would you make a distinction in reference to this outside work between this particular school and a school where a teacher has only one or two grades to take care of? A. I would. * * *
 

 “Q. Where do school teachers prepare their work
 
 *500
 
 for the next day? A. They are supposed to do it at their home at night.
 

 “Q. That is general through your county, is it? A. Yes, sir, rural school teachers especially. * * *
 

 “Q. Was there any particular time required by yourself or the board of education as to when home work was to begin in the evening? A. No, sir.
 

 “Q. They could start immediately after the evening meal — no requirements as to the number of hours? A. The only requirements were that a certain amount of work be accomplished by the teacher and that this work be done outside of school hours.
 

 “Q. As to how the teacher accomplished that you left it to the teacher himself, as long as he came up to the standard? A. Yes, sir.”
 

 Was there any evidence, or evidence from which a reasonable inference might be drawn, that the accident to Inglish arose out of or was within the scope of his employment?
 

 In
 
 Tarlecka
 
 v.
 
 Morgan, ante,
 
 319, 181 N. E., 450, decided at this term of court, it is said in the opinion:
 

 “There is a clear distinction between acts done within the scope of the employment and acts done merely during the employment. ‘Scope of the employment’ has never been accurately defined, although many attempts have been made. It cannot be accurately defined, because it is a question of fact and each case is
 
 sui generis.
 
 The act of an agent is the act of the principal within the course of the employment when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it. In
 
 Nichols
 
 v.
 
 Chicago, R. I. & P. Ry. Co.,
 
 (Mo. App.), 232 S. W., 275, 276, it was held that the test is whether the act was done while one was doing his master’s work, no matter how irregularly. Other Missouri cases hold that ‘scope’ is determined by what the agent was employed to do and what with the knowl
 
 *501
 
 edge and approval of the principal he actually did do.
 
 Marshall
 
 v.
 
 United Railways Co. of St. Louis,
 
 (Mo. App.), 184 S. W., 159, 162;
 
 Thurston
 
 v.
 
 Kansas City Terminal Ry. Co.,
 
 (Mo. App.), 168 S. W., 236, 239. In
 
 Danville, Urbana & Champaign Ry. Co.
 
 v.
 
 Industrial Commission,
 
 307 Ill., 142, 138 N. E., 289, it is said: ‘The controlling factor in determining whether the employee was in the course of his employment at the time of the accident is whether he was at that time in the orbit, area, scope or sphere of the employment, which may include the doing of things not directly connected with the work or with the particular duty for which he was employed but which is incidental thereto or which may reasonably be done within the time of the employment.’ ”
 

 We understand it is not disputed that Inglish was taking the ordinary, direct and necessary route from the school house to his home. In the case of
 
 Industrial Commission
 
 v.
 
 Henry,
 
 124 Ohio St., 616, 180 N. E., 194, it appeared that an employee, having entered upon his employment in the early morning hours, left the employer’s property to get his breakfast, and while returning by a direct and necessary route, along a public thoroughfare, was struck by a train and killed. It was held that the accident was in the course of and arose out of decedent’s employment.
 

 This court, in the case of
 
 Industrial Commission
 
 v.
 
 Davison,
 
 118 Ohio St., 180, 160 N. E., 693, held:
 

 “2. An employee is in the course of his employment while he is performing the obligation of his contract of employment.
 

 “3. An accident incident to or the result of an act done while in the course of his employment, which act is appropriate and helpful to the accomplishment of the purpose of his employment, is a hazard of such employment.”
 

 In that case a teacher employed at Ohio Northern University was invited to deliver a high school com
 
 *502
 
 mencement address, and while upon that errand a member of the graduating class pinned a rose to his coat. A thorn from the rose pricked his finger, and this resulted in his death. It was held that the furtherance of the interests of Ohio Northern University, by which he was employed, by making contacts helpful to his employer, the Ohio Northern University, justified the allowance of the claim for the injury sustained in the course of his employment and arising out of it.
 

 While there is a diversity of decisions in other states, the following cases may be cited in which a recovery has been allowed for injuries sustained by school employees and teachers while away from the school buildings; the employment at the time of the injuries having causal connection with their employment with the school:
 

 In the case of
 
 Ryan
 
 v.
 
 Industrial Commission,
 
 89 Col., 393, 3 P. (2d), 300, it was held that an injury to a school superintendent who fell through a trapdoor while removing school supplies to his home from his automobile, which with the board’s acquiescence he used in procuring supplies, arose out of and in course of his employment.
 

 In
 
 Scrivner
 
 v.
 
 Franklin School District No. 2,
 
 50 Idaho, 77, 293 P., 666, it was held that an automobile collision injuring a teacher proceeding to the residence of the chairman of the board of trustees, to make a customary report, occurred during employment and justified compensation.
 

 In
 
 Stockley
 
 v.
 
 School District No. 1, of Portage Twp.,
 
 231 Mich., 523, 204 N. W., 715, it was held that where a school teacher was killed in an automobile accident while on her way to attend a teachers’ institute at a distance of twelve miles from the school where regularly employed, such school being closed on the particular day to permit the teachers to attend, and she was paid regular salary and instructed to attend the
 
 *503
 
 institute, the accident arose out of and in course of employment.
 

 In
 
 Kyle
 
 v.
 
 Greene High School,
 
 208 Iowa, 1037, 226 N. W., 71, it was held that an injury to a school janitor struck by an automobile when walking in the street because of icy condition, when on his way to a school house in the evening after having completed services for the day, in response to a principal’s call with reference to lights at the school house, arose out of and in the course of his employment, so that the widow was entitled to compensation for Ids death resulting from injury. In the opinion it is said:
 

 .“It is a well settled general rule that an injury suffered by an employee in going to or returning from the employer’s premises, where the work of his employment is carried on, except in special instances, does not arise out of his employment so as to entitle him to compensation. * * *
 

 “An exception to the aforesaid general rule is found in cases where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing, is on his way home after performing, or on the way from his home to perform, some special service or errand, or some duty incidental to the nature of his employment in the interest of, or under direction of, his employer. In such cases, an injury arising en route from the home to the place where the work is performed, or from the place of performance of the work to the home, is considered as arising out of and in the course of the employment.”
 

 Applying the doctrine of these cases to the instant case, the record shows that Inglish had with him examination papers which he was required by his contract to grade, work which it was necessary to do at home; that there being no light provided in the school building and it being impossible during the school hours to perform this work, having seven grades to handle and a continuous series of recitations, the work of the school
 
 *504
 
 and the proper discharge of his duties required him to do such work as the grading of the examination papers at his home, in order to make prompt report to his superintendent. Clearly, such work was at least impliedly a part of his duties under his contract. The
 
 situs
 
 of the work was immaterial, so long as it was performed. The fact that he would doubtless have secured his supper and stayed at his home during the night is only incidental to the work of grading the examination papers promptly, and for the purpose of efficiently continuing his work as teacher of that school under his contract. He was furthering the interests of his employer and had the subject of the work with him at the time of the accident, and was required by the nature of his employment to perform his work to the satisfaction of the superintendent and the board. His school work at home was as much a part of his work as his work in the school hours, and while he was en route from the school house to the
 
 situs
 
 of further work upon school examination papers he was clearly within the scope of his employment, and his injury, happening at that time, arose out of such employment. It follows that the judgment of the Court of Appeals must be reversed and that of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Marshall, C. J., Allen and Stephenson, JJ., concur.