## PROCTOR v. HOAGE.

### No. 6475.

**United States Court of Appeals for the District of Columbia.**

Argued Nov. 7, 1935.

Decided Dec. 30, 1935.

Rehearing Denied Jan. 20, 1936.

GRONER and STEPHENS, Associate Justices, dissenting.

———◆———

Appeal from the Supreme Court of the District of Columbia.

Suit by John A. Proctor against Robert J. Hoage, Deputy United States Employees' Compensation Commissioner for the District of Columbia, to set aside a decision denying claimant compensation for injuries sustained as an employee of the Metropolitan Life Insurance Company, in which the Travelers' Insurance Company intervened. From a decree affirming the decision of the Deputy Commissioner, plaintiff appeals.

Henry I. Quinn, of Washington, D. C., for appellant.

Edwin A. Swingle, Ernest A. Swingle, Leslie C. Garnett, and Allen J. Krouse, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This appeal is taken from a decree of the Supreme Court of the District of Columbia in a compensation case brought under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424, 33 U.S.C.A. §§ 901–950 [made applicable to the District of Columbia, 45 Stat. 600, D. C.Code 1929, Tit. 19, c. 2, §§ 11, 12, 33 U.S.C.A. § 901 note]).

The claimant, John A. Proctor, was an employee of the Metropolitan Life Insurance Company, which was engaged in business in the District of Columbia. During the period of his employment Proctor sustained an injury in an automobile accident, for which he claimed compensation upon the ground that the accident occurred in the course of and arose out of his employment. The claim was contested by the insurance carrier.

The deputy compensation commissioner found against the claimant upon the ground that the injury sustained by him did not arise out of and occur in the course of his employment.

The facts as found by the deputy commissioner were that the claimant on June 8, 1933, the date of the accident, was attending to his regular duties as an insurance agent employed by the company and was so engaged continuously from 8 o'clock a. m. until the time of his injury, which occurred approximately at 10:15 p. m.; that at about 5 p. m. claimant went to the company's office to get forms and other papers and partly completed his weekly account; that subsequently he left the office to make a call, and about 6:30 p. m. he returned in order to meet Mr. Raboy, the assistant manager, by appointment, for the purpose of going with him to solicit insurance at an apartment at Seventeenth and Euclid streets; that an application for insurance was written at this place and the premium was collected for it; that Mr. Raboy then took claimant in his automobile as far as Illinois and Georgia avenues, where claimant boarded a northbound street car; that claimant then rode to the District line, where he usually took a bus for his home, but on this occasion, not desiring to use a bus to resume his journey homeward, he started to cross the street to take a taxicab, and while crossing the street he was struck by an automobile, as a result of which he suffered severe injuries, upon which his claim for compensation was founded.

It was held by the deputy commissioner that the claimant was not going on a specific errand in the interests of the employer

at the time of the injury; that he was going homeward on the same route which he would take after arriving at the street car line had he been going on a personal errand; that his day's work was ended, and that the specific route assigned to him by his employer for work was in the District of Columbia, whereas the injury occurred in the state of Maryland; that claimant, although taking the records and forms home which he was required to fill out for his report and return before 8 o'clock the next morning, was doing so as a matter of his own convenience; that at the time of his injury claimant was not making reports or doing anything to further his employer's interests; that claimant was furnished desk space in the office where reports could be made before the stated time; that the evidence failed to support an inference that the claimant after leaving his last call, or parting with the assistant manager at Illinois and Georgia avenues, had any intention of performing further services for his employer; that the reports were to be completed by 8 o'clock of the next morning, but claimant could use his own discretion when and where he filled them out. Upon these findings of fact the deputy commissioner rejected the claim.

The claimant thereupon filed a bill of complaint in the Supreme Court of the District of Columbia, seeking a reversal of the deputy commissioner's decision. The court, however, denied the claimant's prayer, and the ruling of the deputy commissioner was affirmed. From this decision the present appeal was taken.

The issue before us is whether the decision of the deputy commissioner "is without evidence, or 'contrary to the indisputable character of the evidence.'" Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L. Ed. 598.

The present record contains all of the testimony heard by the deputy commissioner, and in our opinion its indisputable character discloses that claimant's injury occurred in the course of and arose out of his employment, and that the order of the deputy commissioner denying compensation should be set aside.

It appears that at the time of the accident the claimant was employed by the company in the general work of an insurance agent at a fixed salary and that his duties compelled him to spend most of the day in the field, but that he was required to report to the office at 8 o'clock every morning with a written report properly prepared of his proceedings of the preceding day, showing the account of collections, completion of the inspection reports on applications, including all such questions on the application as are not customarily completed in the presence of the applicant, also listing the names of all persons interviewed or solicited for insurance during the day, and showing the balance of his cash account, together with the amount due to the company thereon. After the submission and settlement of such a report at 8 o'clock each morning, and after receiving any special orders then delivered to him, it was the claimant's duty to leave the office and spend the day in the performance of his general services for the company. On the day in question claimant in the course of his duties met Mr. Raboy at the office by appointment, he being the assistant manager of the company and claimant's superior officer assigned to direct claimant in the discharge of his duties as an employee; that they went together to secure certain insurance, and when they were through with this call it was late in the evening and Mr. Raboy told the claimant to go home and complete the work necessary to be completed by him before 8 o'clock of the next morning, and get it ready by that time; and that Raboy, when parting with claimant, ordered that he should have the applications completed thoroughly by the next morning because of his desire that his men should be ready by 8 o'clock, and that they should come in with their cash balanced, cash deposit sheet prepared, and their canvassing sheet for that day prepared, and all their details ready, and he insisted that they must do their detail work at home and not in the office, as he wanted them to be the first out of the office in the morning; that on this particular evening Raboy gave claimant specific orders that he should carry out these instructions to the letter and claimant said he would do so; that Raboy told claimant to have everything ready for the next morning as he (Raboy) was to go out with claimant then, as he had been assigned to claimant for the entire week.

The accident whereby claimant was injured occurred when he was on his way home after promising to obey these instructions and to do such work at home as was necessary to be done before 8 o'clock of the following morning; that the accident occurred about 10:15 p. m., when claimant was crossing Georgia avenue to a taxicab

stand for the purpose of taking a taxicab home.

This testimony, which is undisputed, shows that the claimant's day's work was not ended when he left Mr. Raboy upon the night in question, and that claimant when taking the records and forms home, which he was required to fill out at home for his report which was to be returned before 8 o'clock the next morning, was not doing so as a matter of his own convenience, but in fact he was acting under and by the command of his employer in the discharge of his duties as employee, and that while going home, intending to perform the work which he had been directed by his superior officer to perform at that place, he was engaged in the discharge of his duties as an employee of the company. The claimant's rights, therefore, are not governed by the general rule relating to injuries sustained by employees while going to and coming from their work for the reason that the claimant's employment continued while starting on his way home and would have continued at his home while engaged in the work had he not been prevented by his injury.

In Voehl v. Indemnity Ins. Co., 288 U. S. 162, 169, 53 S.Ct. 380, 382, 77 L.Ed. 676, 87 A.L.R. 245, opinion by Mr. Chief Justice Hughes, it is said: "The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' Cudahy Packing Co. v. Parramore, 263 U.S. 418, 424, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532. See, also, Bountiful Brick Co. v. Giles, 276 U.S. 154, 158, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402. While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

The special orders given by the claimant's superior officer that he should immediately return to his home and there continue his work for the company by performing services in their interest which were required prior to 8 o'clock the following morning, and the fact that the claimant, in obedience to these instructions, started for his home with the intention of there performing the services, which the order of his superior required him to perform there, sufficiently sustain the claim that this case comes within the special rules above referred to, and that the claimant, while starting for his home, was acting as employee.

In Haddock v. Edgewater Steel Co., 263 Pa. 120, 121, 106 A. 196, 197, it appeared that an employee, payable by fixed salary with no fixed hours of service, was instructed by his employer to go to a distant point to examine some natural-gas burners in order to obtain information desired by the employer. He went on the train and returned the same evening about 11:30 p. m., and while on the way to his residence from the depot was struck by an automobile and killed. The Supreme Court of Pennsylvania, in affirming an award in favor of dependents of the deceased employee, said: "True, the facts as found indicate that plaintiff's husband intended stopping at his own residence, to sleep for the night, before reporting the results of his trip of investigation to the president of the defendant corporation; but, none the less, he was still upon his employer's errand and, in that sense, actually engaged in the furtherance of the latter's business or affairs. Since deceased was compelled to return to the city at an hour when he could not at once communicate with his superior, and had to stay somewhere until he could report, he cannot be charged with a departure from his employer's service because, when hurt, he was going to his home for a lodging, rather than to an hotel."

In Inglish v. Industrial Commission, 125 Ohio St. 494, 182 N.E. 31, 83 A.L.R. 210, it appeared that where a school teacher, after school hours, while traveling by the usual direct, and necessary route from his school to his home, carrying examination papers, which he was expected by his coun-

ty superintendent to grade at his home, such being the general practice, there being no opportunity nor facilities to perform such work at the schoolhouse, was struck and killed by an automobile, it was held by the court that the accident arose out of and in the course of the teacher's employment. See, also, Kyle v. Greene High School, 208 Iowa, 1037, 226 N.W. 71; Ryan v. Industrial Commission, 89 Colo. 393, 3 P.(2d) 300; Scrivner v. Franklin School District, 50 Idaho, 77, 293 P. 666; Stockley v. School District, 231 Mich. 523, 204 N.W. 715; Industrial Commission v. Davison, 118 Ohio St. 180, 160 N.E. 693; Bisdom v. Kerbrat, 251 Mich. 316, 232 N.W. 408; Case of Cook, 243 Mass. 572, 137 N.E. 733, 29 A.L.R. 114; Bachman v. Waterman, 68 Ind.App. 580, 121 N.E. 8; State Compensation Ins. Fund v. Industrial Accident Commission, 89 Cal.App. 197, 264 P. 514.

Accordingly, we reverse the decision of the lower court and remand the case, with instructions to sustain the bill of complaint filed by claimant in the case.

GRONER, Associate Justice (dissenting).

I think there is substantial evidence in the record which sustains the holding of the deputy commissioner that the injury did not arise out of or occur in the course of the employment.

STEPHENS, Associate Justice (dissenting).

I am of the view that there is evidence in the record which may be said to support the findings of the deputy commissioner. It is made clear in Crowell v. Benson, 285 U.S. 22, 46, 52 S.Ct. 285, 291, 76 L.Ed. 598, that:

"Apart from cases involving constitutional rights to be appropriately enforced by proceedings in court, there can be no doubt that the Act contemplates that, as to questions of fact arising with respect to injuries to employees within the purview of the Act, *the findings of the deputy commissioner, supported by evidence and within the scope of his authority, shall be final.* To hold otherwise would be to defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task. The object is to se-cure within the prescribed limits of the employer's liability an immediate investigation and a sound practical judgment, and *the efficacy of the plan depends upon the finality of the determinations of fact with respect to the circumstances, nature, extent and consequences of the employee's injuries and the amount of compensation that should be awarded."* (Italics supplied.) As stated in Voehl v. Indemnity Insurance Company, 288 U.S. 162, 169, 53 S. Ct. 380, 382, 77 L.Ed. 676, 87 A.L.R. 245: "The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. [Authorities cited.] Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' [Authorities cited.] While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act." [Authorities cited.] In the case at bar the claimant testified that on the night he was injured the assistant manager instructed him to go home and complete such work as would have to be turned in the following morning, but he also testified that the assistant manager " * * * did not give him instruction as to just what he was to do that night or if he was to get up early the next morning to do it, but instructed him to have it ready to turn in the next morning at eight o'clock; that he could use his own discretion in completing the work between ten o'clock that night and eight o'clock the next morning * * *." He further stated: " * * * that he may have done

some of his paper work on occasions in the morning before making his report to the cashier but the minute eight o'clock sounds the cash window is opened, and also the boss' door is opened and you have to attend to your duties there * * *." The assistant manager testified in a manner probably susceptible of the inference that he gave specific instruction to do the work at home, but also testified: "* * * they make up these accounts at nights either in the office or in their homes, that is their privilege; the Company had not given them any definite instructions as to whether these accounts should be made at the office or at the home * * *." He further testified: "* * * but the balancing of the cash and the daily report have to be made out at home; that some of the men would go back to the office at night to make out the report; that was optional with them, but the majority of them did it at home, and it was the custom for the agents to do it at home * * *."

Thus the testimony was self-conflicting. The deputy commissioner heard the witnesses in person, and his judgment as to the accuracy and the meaning of their testimony is entitled to great respect. The deputy commissioner may have believed that portion of the testimony which indicated that it was within the discretion of the claimant as to when and where he did the work, viz., that night or in the morning, at home or at the office.

I do not assume to say that under no circumstances involving a choice by an employee to select the time and place of work would he be entitled to compensation.[1] If, in the instant case, the claimant had been injured while at home doing the work, he might be entitled to recover. But he was not thus injured; he was injured while going home; and he is thus, even if he had an option to select that night and home as the time and place to do the work, put back within the general rule above stated, that injuries sustained when going to or returning from work are not deemed to arise out of and in the course of employment. The testimony that the claimant had a discretion as to when and where to do the work, if believed by the deputy com-

missioner, negatives any special agreement by virtue of which the service might be said to commence as soon as the claimant started for home, within the purview of the ruling in Voehl v. Indemnity Insurance Company.

It is further to be noted that, apart from what has been said above, the evidence in the record that by the original contract of employment the claimant's working district was listed as Washington, D. C., and that a questionnaire signed by the claimant listed his district as Washington, D. C., may be said to support the finding of the deputy commissioner "* * * that the injury occurred in the State of Maryland, outside of his place of employment."

[1] If, for example, a machinist were told by his employer that he might do certain repair work any day in the week and at any machine shop he might select, and the machinist, selecting a particular day within the week and a particular shop, was injured while doing the repair work at that shop, he might well be entitled to compensation.

