## Weaver v. Eaton Corp.
*[Cite as 3 AOA 167]*

*Case No. 56897*
*Cuyahoga County, (8th)*
*Decided May 3, 1990*

*Martin J. Sammon, Esq., John Gannon, Esq., 1160 Rockefeller Building, 614 West Superior Building, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*James L. Mayfield, Admr., Bureau of Workers' Comp., for Defendant-Appellee.*

*Fred J. Pompeani, Esq., Assistant Attorney General, 1200 State Office Building, 615 West Superior Avenue, Cleveland, Ohio 44113.*

*Aubrey B. Willacy, Esq., Willacy & LoPresti, 700 Western Reserve Building, 1468 West Ninth Street, Cleveland, Ohio 44113, for Defendant-Appellant.*

JACKSON, J.

Eaton Corporation (hereafter referred to as "Eaton") appeals from the judgment of the trial court which granted Deborah Weaver, widow of Robert Weaver, the right to participate in the worker's compensation fund. Eaton assigns nine errors for our review, but for the reasons set forth below, we conclude that the assignments of error lack merit, and we affirm.

I.

In early 1981, the decedent, who was living with his family in Kings Mountain, North Carolina, and working at Eatons' Kings Mountain facility, accepted a position as assistant controller at Eaton's Tinnerman Plant in Brook Park, Ohio. Upon starting work in this position, the decedent obtained temporary housing at a hotel near plant, and was reimbursed by the company. On June 18, 1981, the decedent was found dead in his hotel room at the Sheraton Airport Hotel. It was later determined that decedent was asphyxiated when carbon monoxide entered his room from a boiler used to heat the hotel swimming pool. Deborah Weaver subsequently applied for workers' compensation benefits, but the Industrial Commission ultimately denied her claim. On April 25, 1986, Weaver brought this action for *de novo* review, pursuant to R.C.

4123.519, maintaining that the decedent died in the course of his employment and that his death arose out of his employment. Eaton refuted these contentions and further asserted that the death lacked a causal connection to the decedent's employment.

The matter proceeded to a jury trial on November 28, 1988. the evidence adduced indicated that the decedent was hired as a cost accountant at Eaton's Shenandoah, Iowa facility in 1973, and subsequently accepted a series of promotions, each of which required him to relocated. In 1976, the decedent accepted a position at Eaton's facility in Kalamazoo, Michigan. In 1979, he accepted a position as accounting manager at Eaton's facility in King's Mountain, North Carolina. Finally, in 1981, the decedent accepted a position as assistant controller at Eaton's Tinnerman plant in Brook Park, Ohio.

With respect to Eaton's policy regarding each of these moves, Weaver established that Eaton had the home in which the family was then residing appraised, and if the family was unable to sell it at the time they moved to the new location, Eaton would purchase the home at the appraised price. Eaton also reimbursed the employee for the costs of two house-hunting trips, with the employee's spouse, at the new location. Finally, Eaton reimbursed the employee for the temporary housing costs incurred after the employee began his new job, and also paid the cost of moving the employee's family to their permanent home at the new location.

With respect to the decedent's transfer to Cleveland, Weaver established that the began employment at the Tinnerman plant on March 29, 1981. According to Weaver, she and her children did not accompany the decedent at this time because Eaton would not reimburse them, their house in North Carolina had not yet been sold, and she and the decedent wanted their children to complete the school year at the schools they were attending.

Weaver further established that Eaton reimbursed the decedent for the costs of his hotel bill, meals and other expenses after he moved to Brook Park, and also reimbursed him for weekend trips back to North Carolina to visit his family. It was also demonstrated that Eaton paid a special corporate rate at the Sheraton, and at several other hotels near the plant.

For its case, Eaton maintained that the decedent was a "fixed situs employee" because his duties were performed at the Tinnerman plant, from 8:00 a.m. to 5:00 p.m., and because

Eaton did not exercise control over his evening activities. Further, Eaton's evidence indicated that the decedent was not required to stay at the Sheraton, and that other hotels were closer to the plant.

The cause was subsequently submitted to the jury, and on November 30, 1988, the jury returned a verdict entitling Weaver to participate in the workers' compensation fund. In two special interrogatories, the jury found that the decedent's death occurred in the course of his employment with Eaton, that but for his employment, the decedent would not have been at the hotel, and that the risks to which the decedent was exposed were distinct from or greater than the risks common to the public.

Eaton now appeals, assigning nine errors.

## II.

For its first assignment of error, Eaton posits that the trial court erred in denying its motion to deem certain facts admitted, as plaintiff failed to respond to Eaton's request for admissions pursuant to Civ. R. 36 within twenty-eight days of service. This claim lacks merit.

The effect of failure to respond to a request for admissions is governed by Civ. R. 36(A), which provides in pertinent part as follows:

"* * * Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney. * * *"

Civ. R. 36(B) tempers subsection (A), however, as it provides:

"* * * [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."

While Eaton contends that this provision is of no effect here because Weaver did not move the court for permission to avoid the admissions, we note that the Supreme Court authorized Civ. R. 36(B) relief under circumstances which are identical to those now presented, in *Balson* v. *Dodds* (1980), 62 Ohio St. 2d 287, 290. The court stated:

"Appellant argues that appellee failed to make the required Civ. R. 36(B) motion that she be permitted to withdraw or amend the Civ. R. 36(A) admissions. However, Civ. R. 36(B) does not require that a written motion be filed, nor does it specify when such motion must be filed. *Thus, the rule leaves such matters to the discretion of the trial court.* Herein, the trial court could reasonably find that, by contesting the truth of the Civ. R. 36(A) admissions for the purposes of summary judgment, appellee satisfied the requirement of Civ. R. 36(B) that she move the trial court to withdraw or amend these admissions." (Emphasis added.)

Moreover, we cannot conclude that the actions of the trial court prejudiced Eaton as Eaton concedes that the admissions which Weaver sought to avoid were later admitted at trial. See Appellant' Brief at p. 18.

In accordance with the foregoing, Eaton's first assignment of error is overruled.

### III.

Eaton next contends that the trial court erred in denying its motion for summary judgment, because Eaton claims, the material facts were not in dispute, and it is entitled to judgment as a matter of law. We disagree.

The criteria which must be satisfied to obtain summary judgment pursuant to Civ. R. 56 are as follows:

"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327.

Thus, pursuant to Civ. R. 56(C), a trial court may not grant summary judgment in a matter where the material facts are in dispute, see, e.g., *Hickman* v. *Ford Motor Co.* (1977), 52 Ohio App. 2d 327, 331, or where the moving party is not entitled to judgment as a matter of law. *Taylor* v. *Taylor* (Feb. 2, 1989), Cuyahoga App. No, 54927, unreported.

Applying the foregoing, we cannot conclude that the trial court erred in denying Eaton's motion for summary judgment. For although many of the material facts were undisputed, our review of the relevant precedent leads us to conclude Eaton was not entitled to judgment as a matter of law.

In support of its motion for summary judgment, Eaton maintained that, pursuant to the general rule pertaining to fixed situs employees, participation in the fund should have been denied because decedent sustained carbon monoxide poisoning away from the plant, while pursuing purely personal activities. Eaton further contended that the decedent was outside of the course of his employment when he was killed, and his employment lacked a causal connection to his death.

Eaton's reliance upon the fixed situs rule[1] is misplaced, however, as this rule has no application to employees who are away from their fixed placed of abode, in their home city, because of their employment. *Bower* v. *Industrial Commission* (1939), 61 Ohio App. 469, 472-473.[2]

Moreover, we hold that participation was properly awarded as a matter of law, in accordance with the weight of the relevant precedent.

Compensability is governed by R.C. 4123.01(C), which provides in pertinent part as follows:

"'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. * * *"

In its most recent interpretation of this statute, the Supreme Court had determined that a teacher who fell while soliciting funds for a "flower fund," through which school district employees customarily made contributions for flowers for co-workers, satisfied both the "in the course of, and arising out of" requirements of R.C. 4123.01(C). See *Fisher* v. *Mayfield* (1990). 49 Ohio St. 3d 275.

Applying the statute liberally in favor of the claimant, as mandated by R.C. 4123.95, the court determined that the "in the course of" requirement was met because, *inter alia*, the employee was injured while at a school located approximately one to one-half miles from her place of employment, which was under the control of her employer. *Id.* at 278. The court further determined that, considering the totality of the circumstances, the "arising out of" requirement was met because the teacher fell on her employer's premises, the employer retained control over the situs of the injury, and the employer derived a benefit from the flower fund. *Id.* at 279.

Applying the foregoing to the case at bar, we conclude that Robert Weaver sustained his fatal carbon monoxide exposure in the course of and arising out of his employment. That is, constru-

ing the phrase liberally in favor of compensation, the "in the course of" requirement is met because Eaton contemplated that Weaver's employment would require Weaver to obtain temporary shelter during the week, because Eaton paid for that shelter, and because the injury was sustained in that shelter. In addition, considering the totality of the circumstances, the "arising out of" requirement is met because the Sheraton was in relatively close proximity to the plant, and because Eaton derived a benefit from Weaver's stay at the Sheraton, due to Eaton's payment of a special rate, and due to the fact that this stay allowed Weaver to commence his employment at the Tinnerman plant before obtaining permanent housing for his family.

Further, under Ohio law, where an employee sustains injuries while engaged in otherwise personal activities which are instigated by or subsidizd by his employer, that employee will be within the course of his employment and the injury will be determined to have arisen from that employment for workers' compensation purposes. *Bower* v. *Industrial Commission, supra, Sebek* v. *Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, overruled as to ptomaine poisoning constituting an "injury" in *Johnson* v. *Industrial Commission* (1955), 164 Ohio St. 297, paragraph four of the syllabus; *Pearson* v. *Taylor Fruit Farm* (1969), 18 Ohio App. 2d 193, *Burkett* v. *Mayfield* (Dec. 22, 1988), Mahoning City. App. No. 87 C.A. 152, unreported.

In *Bower* v. *Industrial Commission, supra,* a school teacher was injured while *en route* to a hotel where she was to stay during a "teacher's institute." She was held to be entitled to participate in workers' compensation benefits for her injuries, even though neither transportation nor accomodations were provided by her employer, because attendance at the institute was required by her employer. The court stated:

"It is the view of this court that the circumstances of the instant case show that at the moment of injury the appellee was performing duties incidental to her employment and a necessary part of her entire trip to Toledo to attend the institute, as she had been directed to do by her employer, and that she was doing at the time what her employer would reasonably expect to do; that the 'employment had some causal connection with the injury, either through its activities, its conditions, or its environments.' [Citation omitted.] Appellee had to eat somewhere and had to sleep somewhere during her stay in Toledo, no such accomodation being provided for her by the employer, and to say might have had her dinner and have slept elsewhere would be no answer and no defense, for no one can say what might have befallen her in such event.

"We are aware, of course, of the different situation that would have been presented had appellee been injured in her home city while going from her home to the school where she taught, a fixed place of abode and a fixed situs of employment--situations such as were before the courts in Industrial Commission v. Gintert, 128 Ohio St. 129, 190 N.E. 400, 92 A.L.R. 1032; Inglish v. Industrial Commission, 125 Ohio St. 494, 182 N.E. 31, 83 A.L.R. 210, and other [fixed situs] cases." *Id.* at 472-473.

In *Sebek* v. *Cleveland Graphite Bronze Co., supra,* an employee contracted ptomaine poisoning from food provided by her employer. The court held that such injuries were compensable pursuant to the workers' compensation fund, and stated:

"A rule recognized, and often applied by this court, is that an employee to be entitled to compensation need not necessarily be engaged in the actual performance of work for his employer at the time of an injury. It is sufficient if he is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment.

"'Nor can the contention that the accident did not arise out of and in the course of the employment be sustained. The mere fact that an employee is not actually engaged at his work at the time of injury does not as a matter of law relieve the employer. Under the terms of employment board was furnished. Decedent was where his employer directed him to be, and, although the partaking of food was personal in character, nevertheless was so incidental to his employment that the accident did arise out of and in the course of employment.'" [quoting from *Meyer* v. *Rocttele* (S.D. 1935), 264 N.W. 191.] *Id.* at 698-700.

In *Pearson* v. *Taylor Fruit Farm, supra,* the plaintiff sought participation following the death of her husband. The evidence indicated that the decedent was killed in a fire at a bunkhouse on his employer's premises, which occurred on the employee's day off. The evidence further indicated that employees were given the option of staying at the bunkhouse or going elsewhere, but lodging was free at that location. The court allowed participation in the fund, stating:

"We conclude that if an employee is required to live on the employer's premises, either by express terms of the contract of employment or under conditions of practical necessity where these conditions offer no reasonable alternative, an accident occurring during occupancy of housing facilities is compensable. [Citations omitted.] Where the employee is required to be on the premises under the foregoing conditions, his personal comfort and incidental activities are within the course of employment, including sleeping at night." *Id. at 196.*

*In* Burkett v. *Mayfield, supra,* the employee sought workers' compensation after he was injured while driving a car owned by his employer and house-hunting per his employer's request that he relocate. In allowing participation in the fund, the court rejected the employer's claim that the employee was engaged in a purely personal pursuit, and stated:

"[I]t [is] apparent that appellee's injury was sustained in the course of, and arising out of, his employment. Appellee's search for a new home was consistent with his contract for hire. It was at his employer's request that appellee moved. The employer offered to help with the relocation, specified a realtor, and provided the company vehicle for the search of a new home. The activity appellee was engaged in when he was injured logically pertained to his employment and was incidental thereto.

"The fact that the employer requested the move is further evidence of the requisite causal connection."*Id.,* unreported at p. 3.

Ohio precedent likewise authorizes participation in the workers' compensation fund when the employee sustains an injury while involved in an act which benefits the employer. *Bersche v. Industrial Commission* (1937), 56 Ohio App. 236. In that case, the plaintiff sought participation in the fund where her decedent was killed while attending a national convention as his employer's delegate. In authorizing plaintiff's participation, the court concluded that the decedent was promoting the welfare of his employer at the time of his death, and his death was therefore connected to his employment.

Finally, recovery is generally permitted where the employee is injured during a recreational activity which is sponsored by the employer and benefits the employer. *Kohlmayer v. Keller* (1970), 24 Ohio St. 2d 10; *Columbia Gas of Ohio, Inc.* v. *Sommer* (1974), 44 Ohio App. 2d 69; *Beck* v. *Young* (1962), 119 Ohio App. 109.

In accordance with the foregoing, we hold that the trial court properly denied Eaton's motion for summary judgment, because although the decedent's stay at the hotel was a personal activity, it was incidental to his employment. That is, Eaton indisputably precipitated the decedent's move to Brook Park, in contemplation that his job would begin before he and his family obtained a permanent home in Cleveland, and in contemplation that the decedent would acquire temporary shelter. Eaton likewise exercised some influence in the decedent's selection of the Sheraton, due to the corporate rate which Eaton paid at this hotel. In short, Eaton encouraged decedent's use of temporary shelter, and benefitted from decedent's stay so that he could begin his position at the Tinnerman plant before his family moved to Cleveland. Thus, decedent's employment is causally related to his death.

Eaton's second assignment of error is overruled.

IV.

For its third assignment of error, Eaton posits that the trial court erred in denying its motion for a directed verdict, made following plaintiff's opening statement. Eaton claims that this motion should have been granted because plaintiff's counsel "stipulated" as follows:

"What happened was this: Unfortunately, June of 1981, and we'll stipulate to this, I believe, that [decedent] was in the Sheraton Motor Inn on Brookpark Road about 16700. And he was found that next morning, that morning by the cleaning woman, and he was asphyxiated. And what happened was the heater for the swimming pool, the previous year when they close it up for the winter, someone put a piece of plywood there, and all the fumes came up into his room, unbeknownst to him.

"Now, as I told you, fault is not an issue here. We're not saying that Eaton Corporation did this, that they maliciously did this, because they didn't." (Tr. 20-21.)

Initially, we note with respect to procedure, that a trial court should exercise great caution in sustaining a motion for a directed verdict which is made following an opening statement; construing the statement in favor of the party against whom the motion is made, it must be clear that all of the facts expected to be proved and those which have been stated, do not constitute a cause of action. *Brinkmoeller v. Wilson* (1975), 41 Ohio St. 2d 223, syllabus.

With respect to the substantive law, we note that the Supreme Court has consistently held that:

"'[T]he test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment.' *Littlefield* v. *Pillsbury Co.* (1983), 6 Ohio St. 3d 389, 3981. *Bradley* v. *Daughterty* (1980), 61 Ohio St. 2d 302, 303 [15 O.O.3d 359]; *Indus. Comm.* v. *Weigandt* (1921), 102 Ohio St. 1; *Indus. Comm.* v. *Gintert* (1934), 128 Ohio St. 129; *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472]."

Cautiously construing plaintiff's counsel's remarks in his favor, as mandated by *Brinkmoeller* v. *Wilson, supra*, it is clear that counsel merely apprised the jury that Eaton's fault was not the relevant issue in the case. Moreover, counsel's remarks did not in any way negate plaintiff's assertion that the decedent's death arose from, and was connected to his employment. Accordingly, the trial court properly denied Eaton's motion for a directed verdict. Civ. R. 50(A).

### V.

In his fourth assignment of error, Eaton argues that the trial court erred in denying its motion for a directed verdict made at the close of the plaintiff's case. In its fifth assignment of error, Eaton claims that the court erroneously denied its motion for a directed verdict at the close of all of the evidence. Both assignments of error lack merit.

A motion for a directed verdict which is based upon the evidence presented is governed by Civ. R. 50(A), which provides as follows:

"(4) *When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." See, also, *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 220. Pursuant to this rule, a trial court must direct a verdict in favor of the defendant where there is no evidence tending to prove an essential element of the plaintiff's cause

of action. *Rayburn* v. *J.C. Penny Outlet Store* (1982), 3 Ohio App. 3d 463, 465; *Eplins* v. *Express Co.* (1977), 55 Ohio App. 2d 59, 61.

The essence of plaintiff's cause of action was that the decedent's death occurred in the course of his employment, and arose from his employment. As we noted previously, plaintiff's evidence tended to prove her claim, as it established that Eaton instigated decedent's move to Brook Park, in contemplation that he would seek temporary shelter there. Moreover, Eaton benefitted from this arrangement so that decedent could begin his employment promptly.

Eaton's evidence that the hotel was approximately two miles from the plant and that decedent was not performing work or being paid for work when he died, was irrelevant, however, as the decedent was not a fixed situs employee, due to his work-related absence from his permanent home. *Bower* v. *Industrial Commission, supra.*

Accordingly, the trial court properly denied both motions for a directed verdict. The fourth and fifth assignments of error are overruled.

### VI.

In its sixth assignment of error, Eaton maintains that the judgment of the trial court is against the manifest weight of the evidence. For the reasons set forth with respect to assignments of error Nos. 2, 4, and 5, this contention lacks merit.

### VII.

Eaton next contends that the trial court erred in excluding the depositions testimony[3] of John Cates, a maintenance worker for Sheraton at the time decedent was killed.

Initially, we note that a trial court is vested with discretion in determining whether evidence should be admitted. See *State* v. *Mann* (1985), 19 Ohio St. 3d 34, 38. We cannot conclude that this discretion was abused in the instant case.

Cates' testimony was probative of Sheraton's responsibility for the release of carbon monoxide into decedent's room. For this reason, Eaton maintained that the testimony should have been admitted to refute the causal connection between decedent's employment and his death.

We note that the testimony had no probative value with respect to the issue of whether decedent's stay at the Sheraton was incidental to his employment or whether his death arose from his employment or occurred in the course of his employment. Rather, it was merely probative of the issue of fault in creating the harm, an irrelevant issue in a worker's compensation case. *Littlefield* v. *Pillsbury Co., supra.* Accordingly,

we hold that the trial court did not abuse its discretion in excluding testimony.

### VIII.

In its eight assignment of error, Eaton claims that the trial court erred in refusing to instruct the jury on the issue of intervening causation, sufficient to negate Eaton's liability. In its ninth assignment of error, Eaton claims that the trial court erred in failing to submit its first six interrogatories to the jury. As Eaton tendered no objection these rulings (Tr. 240-242, 246, 344-346), they have not been preserved for our review. See *Hershovics* v. *Mindlin* (1973), 40 Ohio App. 2d 551, 556.

*Judgement affirmed.*

NAHRA, P.J., and McMANAMON, J., concur.

Judge Jackson, Lake County Common Pleas Court, sitting by assignment.

---

[1] See e.g., *Industrial Commission* v. *Gintert* (1934, 128 Ohio St. 129 (denying participation in the workers' compensation fund where a teacher was injured on her way to the school building where she worked.)
[2] Because we hold that the fixed situs rule is not applicable to this case, we do not consider the special hazard exception to this rule set forth in *Littlefield* v. *Pillsbury* (1983), 6 Ohio St. 3d 389, 341.
[3] Cates died before trial.