Bobinson, J.
 

 The evidence in this case is not in conflict. It is to the effect that Dr. John Davison was an employee of the Ohio Northern University, as dean of the department of education, and as vice president of the University at the date of his death, and had been such an employee for many years prior thereto. The terms of his employment and the character and extent of his duties were proven by parol testimony. That testimony was to the effect that “a part of the definite duties of Dr. Davison was to act as traveling representative of the University, and all fees accruing therefrom were used to augment his salary;” that his lectures to graduating classes and teachers’ institutes were considered a part of the extension work of the University; that his speaking engagements were made after consultation with the school administration, and were accepted with reference to a geographical distribution of effort for the greater advantage of that institution; that, upon his return from a lecture trip, he reported lists of prospective students to the
 
 *182
 
 school administration, and made recommendations with reference thereto; that, while absent from his classroom on such lecturing excursions, his salary from the University continued, and he, out of such salary, employed a substitute to teach in his stead; that, by reason of the multiple functions he performed, and the several sources of his income, the aggregate of his earnings was in excess of the earnings of the deans of the other departments of the University; that on May 24, 1924, in pursuance to an arrangement theretofore made with the board of education of the .Green Springs High School, with the consent and approval of the Ohio Northern University, he delivered a lecture to the graduating class of that high school; that the class had adopted the rose as its class flower; that immediately before beginning his address he was presented, by a member and representative of the class, with a rose to be worn by him during the delivering of his lecture; that in removing the stem from the rose, or in the pinning of it to his lapel, he pricked his finger; that on August 11, 1924, he died from the effect of such injury.
 

 The plaintiff in error concedes that the evidence tended to prove that the decedent received his injury in the manner claimed, and that he died as a result thereof. That question, therefore, will not be further considered.
 

 Two assignments of error are urged here: (1) That the decedent was not in the course of his employment with the Ohio Northern University at the time he received his injury; and (2) that his injury
 
 *183
 
 did not arise ont of any hazard of his employer’s business.
 

 Discussing these assignments in their order, the first is a question of fact, and the trial court found as a fact that the decedent was in the course of employment with the University. The evidence upon that subject is not in conflict, and clearly warranted the finding of the trial court that, at the time he received his injury, he was in the performance of a duty he was employed by the Ohio Northern University to perform. Unless, therefore, it may be said, as a matter of law, that the fact that he had at the time an additional employer, whom he was also serving, with the consent of the Ohio Northern University, precludes his widow from reaping the benefit of the Ohio Northern University’s compliance with the Workmen’s Compensation Law (Section 1465-37
 
 et seq.,
 
 General Code), there is no legal question involved.
 

 It will be remembered that the i evidence was to the effect that the scope of his employment by the Ohio Northern University included, in addition to classroom instruction and departmental supervision, traveling extension work, consisting of addresses to graduating classes and teachers’ institutes ; that it was his duty to advise and consult with the University administration and arrange his speaking trips with reference thereto; that the purpose, in so far as the University was concerned, of such lecturing trips, was to secure members of the graduating classes and attendants of the teachers’ institutes as students of the University. The relationship, then, of Dr. Davison to the University on the occasion of these lecturing trips was not differ
 
 *184
 
 ent from the relationship which exists between a manufacturer or jobber and his traveling salesman; the salesman being in the course of his employment, not only while in the act of making, or attempting to make, a sale, but while traveling to and from the place of such sale or attempted sale.
 

 It will be remembered also that, notwithstanding the fact that Dr. Davison presumably received additional compensation from the board of education of the Green Springs High School, he received such compensation with the consent of the University, and he was at the' same time receiving compensation from the University; that the purposes and duties of his employment by the University and his employment by the board of education were not inconsistent, but were, in many respects, common. The additional employment, therefore, by the board of education made Mm no less an employee of the University. The function he was performing for the board of education was in no way in conflict with the function he was performing for the University. The dual employment, therefore, affords no legal obstacle to participation by his widow in the state insurance fund. We are in accord with the courts below in their holding that at the time of Ms injury he was in the course of his employment with the Umversity.
 

 This brings us to a consideration of the second assignment of error, whether the acceptance of the rose and the consequent prick of Ms finger was a hazard of his employment with the University. Since we have held that, notwithstanding the fact that at the time he was in a distant community, addressing a class not of the University, nevertheless the scope of his employment with the University
 
 *185
 
 was such that it included his activities at such a place and before such a class, his situation with reference to the hazards of his employment there and before that class was not different from that which it would have been had the incident occurred in his own classroom before a matriculated class of the University. Had he at the time been engaged in instructing his class in the science of botany, and had he had under consideration the subject of the rose, and had deemed it appropriate and helpful, although not obligatory, to demonstrate his lecture with a specimen, and in such demonstration had pricked his finger, and had died as a result thereof, no one would question but that his injury was a hazard of his employment. True, he might have discussed his subject without the use of a specimen, and thus have avoided the hazard; but the use of the specimen was appropriate and helpful, and well within the course of his employment. Was it any less a hazard of his employment because he might have performed his duty without incurring the risk?
 

 In the instant case, as a part of his employment he had gone to the village of Green Springs to interest the graduating class of its high school in his employer’s University; to attract its members to become students of his employer’s University. In the performance of his obligation to his employer, it was appropriate and helpful to the accomplishment of the purpose for which he had been employed for him to conform to the request of the class that he wear the flower which they had adopted as'their class flower. To have rejected it might have been harmful to the cause of his employer. To accept it
 
 *186
 
 would at least not be harmful, and might be helpful. He chose the helpful course. It involved an unexpected hazard, the same hazard that lurked in the specimen rose he exhibited to his class in botany in his own classroom. What, legal principle distinguishes the one from the other? Each was an act done in an attempted furtherance of the purpose for the accomplishment of which he had been employed, and each was appropriate and helpful to such end.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen and Matthias, JJ., concur.