## BERSCHE v INDUSTRIAL COMMISSION

Ohio Appeals, 6th Dist, Wood Co

Decided March 1, 1937

Bowman & Hanna, Bowling Green, for appellee.

Herbert S. Duffy, Attorney General, Columbus, Eugene Carlin, Columbus, and Floyd A. Coller, for appellant.

### OPINION

By CARPENTER, J.

In the trial court this was an appeal from an order of the Industrial Commission disallowing a death claim made by appellee, Bernice N. Sawyer Bersche. The only error assigned and insisted upon in the brief of appellant is the refusal of that court to direct a verdict for the claimed reason that the injury which caused the death of the decedent was not occasioned in the course of his employment and did not arise out of it.

The material facts are undisputed and are substantially as follows:

On July 30, 1932, and for some time prior thereto, The Hoytville Accredited Hatcheries, Inc., was a corporation engaged in producing incubator baby chicks and marketing them over a wide territory in various states. Charles L. Sawyer was the president and sales manager of the company and as such, one of its employees. The company was a contributor to the Workmen's Compensation Fund, and the salary of Mr. Sawyer was included in the payroll on which the premiums it paid to that fund were based.

On and prior to that date there had existed a national organization of incubator baby chick producers known as The International Baby Chick Association, the object of which was to foster, promote, improve and protect the baby chick industry and allied branches of poultry husbandry. It also had a code of ethics to which every member was required to subscribe. Its purpose was to insure honorable dealing with the public by its members and bind them to refrain from misleading and fraudulent advertising. It also maintained a sales-service for the benefit of its members, particularly an "over and short" clearing house arrangement by which members, oversupplied with baby chicks, could contact members in need of them to fill orders, or vice versa. This service was of great financial benefit to the members of the association.

Its members consisted of persons, partnerships, firms, corporations and state baby chick associations. The Hoytville Accredited Hatcheries, Inc., was a member of the association and Mr. Sawyer was its delegate and representative at the annual meeting in 1932. He was also president and a member of the board of directors of the association. Mr. C. A. Norman, who owned and operated two large hatcheries at Knoxville, Tennessee, was a member of the association and also of its board of directors.

It held annual meetings at various places in the United States, and in the year 1932 the annual meeting was held at Milwaukee, Wisconsin. The formal convention

session began Monday, August 1st of that year. On Friday, July 29th, the board of directors met and was in session that day and the next. At that meeting of the board, Mr. Norman was formally charged with having violated the code of ethics in certain particulars. Hearings on the charges were had the 29th and 30th, and the board found him guilty and ordered him suspended for one year from membership and from participation in the activities of the association. When this order was read to Mr. Norman a second time at his request, he took a pistol from his coat pocket and shot Mr. Sawyer, the president, and Mr. Hicks, the managing director, each twice, then he put the gun to his own head and shot. Sawyer was killed instantly; Norman lived a few hours and died; Hicks recovered.

Sawyer and Norman had been associated as leaders in the international association for several years, and were very friendly. At no time at the hearing of the charges against Norman, or at the time of the shooting was there any indication of ill feeling, malice or hatred, except the shooting. The evening before, the directors with their wives, including Sawyer, Hicks and Norman, had had dinner together at the hotel where they were all staying.

Plaintiff, who was the surviving widow and sole dependent of Mr. Sawyer, filed an application for compensation with the Industrial Commission. This was rejected on the finding of the commission that "decedent's death was not due to an injury sustained in the course of and arising out of his employment." · On rehearing the claim was disallowed and appeal was taken to the Common Pleas Court where the evidence of the facts substantially as above stated was submitted to a jury which found. for plaintiff. Judgment for her was entered and the Industrial Commission took this appeal.

The question presented, as stated at the beginning of this opinion, has two phases: (1) Was the injury received in the course of the employment, and, (2) was it the result of or did it arise out of the employment?

Fassig v State ex Turner, Atty. Gen., 95 Oh St 232, 116 NE 104.

1. From the evidence it appears that the business of producing baby chicks is highly competitive, and most producers, including the Hoytville company, market their chicks over a large territory via parcel post. In such business the duties of the sales manager are important to the success of the enterprise.

It also appears that substantial benefits in a financial way result to the industry from the co-operative efforts of The International Baby Chick Association, in extending the market for its members and in fostering the good will of the buying public toward the industry in general, and especially the member hatcheries in particular.

The Hoytville Accredited Hatcheries, Inc., recognized this and sent its president and sales manager to the association conventions and no doubt paid him his salary while so engaged. He in turn won a prominent place in the administration of the organization. In all of this he was promoting the welfare of his employer. While the delegates may have enjoyed some social pleasures as incident to their annual meetings, such were secondary. These conventions brought no financial or professional profit to the delegates apart from the businesses they represented.

From all of this it is apparent that Mr. Sawyer was, at the time he was killed, definitely "engaged in the promotion of his employer's business." **Industrial Commission v Bateman, 126 Oh St 279, 185 NE 50.** It was "employment for work of the kind required in the business of the employer and it" was "in conformity to the established scheme or system of the business." **State ex Bettman, Atty. Gen. v Christen, 128 Oh St 56, 190 NE 233.**

The fact that Mr. Sawyer was the president and a member of the board of directors of the association, and was serving in those capacities on the fatal day, did not make him any the less "engaged in the promotion of his employer's business." In fact, those positions may very well have added to his usefulness to The Hoytville Accredited Hatcheries, Inc. But it is urged that in those capacities he was an employee of the international association. What of it, if thereby he was promoting his employer's business? The relationships were not inconsistent or conflicting. **Industrial Commission v Davison, 118 Oh St 180, 160 NE 693,** is in principle, exactly in point. Dr. Davison was a university professor whose duty it was, among other things to advertise and promote the university among prospective students. While addressing a high school commencement for a fee, he sustained an injury from which he died. The Supreme Court, in the first paragraph of the syllabus, said:

"The fact that a regular and continuously employed employee of an employer who is subject to the burdens and entitled to the benefits of the Workmen's Compensation Law receives an injury at a time when he is in the course of his employment, both with such employer and in the course of a casual employment with another employer, with the consent of his regular employer, will not prevent him, or, in case of his death, his dependents, from participating in the state insurance fund."

This case was quoted and approved at page 283 of the opinion in Industrial Commission v Bateman, supra.

2. Another argument presented by the commission is that the risk or hazard of the death Sawyer suffered was not one having a causal connection with his employment, or one which could have been reasonably anticipated in connection with his employment. In several cases injury came in a similar way to employees from unexpected and unwarranted assaults and compensation was allowed. In **Industrial Commission v Pora, 100 Oh St 218, 125 NE 662**, a controversy with a fellow employee arose over possession of a tool, and Pora was assaulted and killed. In **Delassandro v Industrial Commission, 110 Oh St 506, 144 NE 138**, a city street cleaner, while at work, told a man who was sweeping dirt into the street that he was violating a city ordinance, and he assaulted the street cleaner. In the case of In Re McNicol, 215 Mass. 497, 102 NE 697, L.R.A. 1916A, 306, the court, speaking of a fatal assault by an intoxicated fellow workman, said:

"It (the injury) need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

These authorities lead us to answer that the injury which caused the death of Mr. Sawyer was: (1) occasioned in the course of his employment by The Hoytville Accredited Hatcheries, Inc., and (2), arose out of such employment, and therefore, the judgment of the trial court must be affirmed.

Judgment affirmed.

LLOYD and OVERMYER, JJ, concur.