ADAMS, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided April 26, 1939.)

*Mr. S. W. Crawford* and *Mr. Charles Boyd,* for appellee.

*Mr. Thomas J. Herbert,* attorney general, *Mr. E. P. Felker* and *Mr. Karl Stouffer,* prosecuting attorney, for appellant.

CARTER, J. Plaintiff appealed to the Common Pleas Court of Columbiana county from an order of the Industrial Commission of Ohio disallowing an application for compensation from the state insurance fund.

In her petition she alleged that on the fourth day of January 1936 she was in the service of Columbiana county as an employee in the office of the county treasurer of that county; that on that date she was directed by George S. Boyce, the county treasurer, her employer, to deliver certain tax papers to one Corydon W. Arnold at Wellsville; that while in the performance of this duty and while being conveyed to the office of Mr. Arnold at a point on state route No. 30 about four miles from Lisbon, the county seat of Columbiana county, a collision occurred between the vehicle in which she was being conveyed and another vehicle being operated on the highway in an opposite direc-

tion; and that as a result of the collision she sustained certain injuries that incapacitated her from doing and performing her duties as she formerly did. She also alleged that the employer was amenable to pay compensation, that due proceedings were had before the commission, and that her appeal to the Court of Common Pleas had been filed.

An answer was filed by the defendant in which it admitted the amenability of the employer; that the plaintiff was injured as alleged in the petition; that she was in the employ of Columbiana county; and that due proceedings were had on the application as set forth in the amended petition. The defendant then denied all other allegations of the petition.

The case was tried to a jury, resulting in a verdict in favor of plaintiff. Motion for new trial filed, overruled, judgment rendered on the verdict. Appeal is prosecuted to this court on questions of law.

There is very little, if any, dispute as to the facts involved. The plaintiff lives in Wellsville and worked as a clerk in the county treasurer's office at Lisbon. She rode back and forth from her home to the office with a Mr. Vorndren, with whom she, together with others, was riding at the time of the injury. Sometime in the week preceding January 4, 1936, plaintiff was asked by Mr. Arnold of Wellsville, who lived about two blocks from plaintiff's home, to bring with her a set of Whittemore tax blanks from the office, and the plaintiff, as she was leaving the office shortly after twelve o'clock on Saturday, January 4, informed her employer, Mr. Boyce, the county treasurer, that she was taking along a set of tax blanks for Mr. Arnold, and Mr. Boyce replied ''All right go ahead and deliver them.'' She then left the office with the papers and about a half an hour later was injured in the automobile accident. She was at the time travelling over the same route that would take her to her home, although she had informed Mr. Arnold that she would drive

directly to his office to deliver the papers before going to her home.

Four errors are urged on the part of the defendant. Epitomized the four may be resolved into one question for consideration and determination. Did the injuries sustained by plaintiff arise out of and in the course of her employment? Both of these conditions must coexist as a condition precedent to her right to participate in the workmen's compensation fund. *Highway Oil Co.* v. *State, ex rel. Bricker, Atty. Genl.,* 130 Ohio St., 175, 198 N. E., 276. The court said in that case that for one to be eligible to participate in the state insurance fund it must be established that the injury was accidental and occurred not only in the course of, but resulted from or arose out of, the employment. A causal connection between the employment and the injury must be established. In the course of its opinion the court said: "It is essential for a claimant to establish that the employment had a causal connection with the injury, either through its activities, its conditions or its environment."

In the instant case it is urged by defendant that the injury did not occur in the course of, or arise out of, the employment. It is the contention of plaintiff that her injuries were accidental and that the same occurred in the course of and resulted from, or arose out of, her employment.

There can be no question that the injuries of which she complains were accidental. Did her injuries occur in the course of and arise out of her employment? First of all, what does the testimony disclose as to the contract of employment? Plaintiff was in the employ of the county treasurer and had worked in that office for a period of about six years prior to the accident in question. There is testimony in the record that there were no particular hours, but that she was subject to call at any time when the treasurer desired her assistance. She testified that it was and had been the cus-

tom prior to the time the present treasurer took office to deliver such papers as she was to deliver to Mr. Arnold; and that from the time she first started to work in the office some six years before it was a part of her duties to deliver such or similar papers when requested to do so. On cross-examination she testified that she had frequently delivered papers for the treasurer throughout the period of several years; that Mr. Arnold of Wellsville requested claimant to bring from the treasurer's office these papers relating to delinquent taxes; and that she stated to him that she would do so and communicated his request to the treasurer, Mr. Boyce, who said "All right go ahead and deliver them." She further testified she had these papers with her at the time of the accident and was going to Mr. Arnold's office to deliver the same to him—not to her home in Wellsville, but to Mr. Arnold's office.

True, plaintiff's home was in Wellsville also and had she been going home at the close of the day, with no other duties of her office to perform, the injuries received could and would not have arisen out of or in the course of her employment. However, under the custom established in the office during the years plaintiff had been in the employ of the office, which custom was apparently continued during the incumbency of the new treasurer, and by virtue of the further fact that her employer instructed her to deliver these papers to Mr. Arnold, there is some evidence that such work was contemplated at the time of the entering into the contract of employment of plaintiff and that she was at the time carrying out one of the purposes of her employment.

Now it is urged that she would have travelled over the same road on her way home and the fact she had the Arnold papers at the time had nothing to do with the accident and resulting injuries. While it is true she was on the same road she would have travelled had she been going directly home, nevertheless in travelling

over this road she was on the way to Mr. Arnold's office to deliver the papers as promised and as instructed to do so by her employer. There could hardly be much doubt that if it was the custom of the treasurer's office and a part of the contract of employment to deliver papers to taxpayers requesting the same and plaintiff had started to Salem, north of Lisbon, instead of Wellsville, south, to deliver such papers at the request of her employer, and was accidentally injured while travelling from Lisbon to Salem on the mission, she would be entitled to participate in the Workmen's Compensation Fund. To say that while on a similar mission and by reason of the fact that she was at the time travelling over the same highway she would travel in going home, and for that reason she would not be entitled to compensation, appears to this court to be extending the doctrine of non-compensability to an unwarranted degree. As said in the case of *Cooper v. Industrial Commission,* 56 Ohio App., 538, 11 N. E. (2d), 251, if there be any doubt as to the right of the claimant to participate that doubt should be resolved in favor of the claimant. We might further suggest that courts have, not only in the state of Ohio but outside, consistently held that the Workmen's Compensation Act should be liberally construed to effectuate the purposes for which it was enacted.

Defendant has cited many cases in an attempt to sustain its claim that the claimant at bar does not come within the provisions of the Workmen's Compensation Act. We have examined each and every one of these cases with care, and we find that none of these cases are directly in point; that the same facts and circumstances were not present. Counsel cite in particular the case of *Highway Oil Co.* v. *State, ex rel. Bricker, Atty. Genl., supra,* as sustaining their contention. In the course of that opinion the court cites with approval *McNicol's case,* 215 Mass., 497, 102 N. E., 697, wherein the court said, "* * * an injury is received 'in the

course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. * * * It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.'' The cause of the injury must be incidental to the character of the business and not independent of the relation of master and servant.

There has been called to our attention the recent case of *Klippel* v. *Industrial Commission,* unreported. In that case the employer was engaged in the selling of coal, and on January 13, 1934, the claimant was instructed by her employer to take with her an account against a customer residing in another part of the city and to stop on Monday morning for the purpose of making collection. She was also instructed to take with her a $10 bill and stop at the bank for the purpose of obtaining small change. She left her place of residence on Monday morning, and after arriving on the sidewalk in front of her residence she slipped and fell. The court held that the employer was not liable for injuries sustained by the employee when going to the place of employment and returning from the place of employment; that her mere intention to stop at those places would not bring her within the purview of the Workmen's Compensation Law; and that if she turned away from her usual course to enter the premises of

the customer then her hazard would no doubt have been increased, or if she had slipped and incurred the accident when turning away to carry on these duties which she had been instructed to accomplish, a different question would have been presented. We do not have all the facts of that case before us, but from what we have read of the case there is nothing to indicate that what she was doing or attempting to do on the occasion when she fell upon the ice was contemplated or a part of the contract of employment. In the *Klippel case* what the employee was doing at the time was incidental and there was no evidence that such work was contemplated when the parties entered into the contract of employment, which clearly distinguishes it from the instant case.

We might further suggest that if there is evidence of probative value as to whether the injuries sustained by plaintiff occurred in the course of her employment then a jury question was presented and the jury found in plaintiff's favor.

Now as to the claim of plaintiff. In an annotation in 80 A. L. R., 126, we find the following: "* * * the provisions of workmen's compensation acts should be given a liberal construction to effectuate the purpose for which they were enacted; that is, to place the burden of injury and death upon industry." The author states that "the earlier rule, set forth in the prior annotation, that an employee is not entitled to compensation for injury occurring in the public street unless it can be shown that the workman's employment involved peculiar exposure to the perils of the street, has been adhered to in some later cases." However, in this annotation the author makes a further observation as follows: "In the following cases decided subsequently to the prior annotation, the later view there stated was applied, permitting a recovery of compensation where the employee received a street injury while in the course of his employment, although the

employment may not have required his presence in the street continually, but only occasionally, or even on the one occasion on which he was injured." Authorities are cited from many of the states of the Union sustaining this observation.

In 42 Ohio Jurisprudence, 632, Section 53, the author states: "Ordinarily, an employee who has a fixed and limited working place is not to be regarded as within the course or scope of his employment while traveling between his home or place of abode and such working place, within the meaning and operation of the compensation act. There are, however, three generally recognized exceptions to this rule, namely: (1) Where the employer, as an incident of the employment, provides the means of transportation; (2) where the way used is the sole and exclusive way of ingress and egress, or where the way of ingress and egress is constructed or maintained by the employer; and (3) *where the employee is still charged, while on his way to or after reaching his home, with some duty or task in connection with his employment.* * * * in order to have such effect the traveling must itself involve the performance of some duty incidental to the employment." (Italics ours.) It is further stated that "injury to a filling station attendant, one of whose duties was to take the day's receipts home with him at night for safe-keeping, occurring in consequence of a collision between the automobile which he was driving and another car as he was proceeding home with the day's receipts, arises out of and occurs in the course of his employment within the meaning of the Workmen's Compensation Law. What may be regarded as a further exception to the general rule has been made in the case where the employment is continuous in the sense that the employee is subject to be called for active duty at any hour, and the injury is received while responding to such call." At page 637, Section 55, the author further states under the subject, "In-

juries Occurring in or upon Streets or other Public Ways or Places'': ''Compensation has been allowed, under the Ohio Workmen's Compensation Act, for an injury resulting to an employee from a street peril, while in the course of his employment, in accordance with what is said to be the rule generally prevailing in other jurisdictions.''

In 71 Corpus Juris, 675, Section 420, the author states that, where an employee is injured while engaged in a mission partly for his own benefit and partly for his employer, it is the employer's trip.

''An employee is in the course of his employment while he is performing the obligation of his contract of employment.''

''An accident incident to or the result of an act done while in the course of his employment, which act is appropriate and helpful to the accomplishment of the purpose of his employment, is a hazard of such employment.'' *Industrial Commission* v. *Davison*, 118 Ohio St., 180, 160 N. E., 693. To the same effect, see 42 Ohio Jurisprudence, 630, 631, 633, 637; *Industrial Commission* v. *Murphy*, 50 Ohio App., 148, 197 N. E., 505; and *Industrial Commission* v. *Laraway*, 46 Ohio App., 168, 188 N. E., 297. Many other cases might be cited to the same effect.

Mr. Boyce testified as follows: ''We have employed in our office someone from practically every city or village in their geographic condition of the county, whereas the county seat is located in the village while there are four cities outside the village, makes it necessary at times that rush work can be sent to persons living in their respective towns by them individually, and that sometime prior to the time of the accident he had issued orders that any work that was to be taken to those towns could be very conveniently handled by any of the clerks who were on their way home, and it was the custom for many of them to take papers to many different individuals, not only Wellsville but

East Liverpool, Salem, Columbiana, East Palestine or wherever they may reside.''

He further testified in response to the following questions:

"Q. What was your agreement with her and her with you as to the duties she was to perform and what hours was she to work, etc. Just generalize. A. We haven't any particular hours of working. We have been so awfully busy and short of help that it is necessary many times to work overtime, night, Saturday afternoons and even Sundays.

"Q. What other duties were stipulated for her when you hired her? A. I would say that the duties of delivery papers to any taxpayer would be one of the stipulations.

"Q. That she was to what? A. She was to deliver any papers to any taxpayers or to any person which had business in the office.

"Q. How much later? A. I couldn't say. I told different ones the same thing that it was the custom to deliver papers.

"Q. You assumed that it was right, did you, to have them perform duties outside of the treasurer's office? A. Yes, sir.''

Mr. Boyce also testified that Miss Adams had been performing errands like this before. Others testified that there were no particular closing hours in the treasurer's office at the time of the accident.

After a perusal of this record and an examination of innumerable authorities, we have come to the conclusion that the trial court was not in error in refusing to direct a verdict in favor of the defendant and that the finding of the jury is not against the manifest weight of the evidence or contrary to law.

The judgment of the lower court is affirmed.

*Judgment affirmed.*

NICHOLS, P. J., and PHILLIPS, J., concur.