PETTIT, APPELLANT, *v.* KELLER, ADMR., BUREAU OF WORKMEN'S
COMPENSATION, ET AL., APPELLEES.

[Cite as Pettit v. Keller, Admr., 9 Ohio App. 2d 91.]

(No. 4658—Decided January 19, 1967.)

*Messrs. Traxler, Malkoff & Shwartz,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. Donald M. Colasurd* and *Mr. Robert J. Dodd, Jr.,* for appellee Elmer A. Keller, Administrator, Bureau of Workmen's Compensation.

*Mr. Edward Roberts,* for appellee Ted Mesmer & Sons, Inc.

GRAY, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Mahoning County.

James R. Pettit, plaintiff's decedent, was employed as a laborer by Ted Mesmer & Sons at its Ellsworth coal tipple. His fellow employees at the tipple were Donald Capel, weighmaster, and William L. Sanor, laborer.

On December 23, 1963, Pettit went to a restaurant off the premises of the employer for a lunch for Capel and, while on that trip, was killed in an automobile accident.

It will be necessary to fill in some background. The working hours on that day were from 7:30 to 5 or 5:30. The weigh-

master was not in actual control of the other two men. He was in control of the money drawer, and he was the only one who could compute the coal bills for the various coal customers. There were different prices for different grades of coal sold at the tipple. Sanor and Pettit were permitted to accept money for coal sold when the exact amount of money was tendered, but they were not allowed in the money drawer. From the record it appears that they rarely accepted money for the sale of coal.

It was also shown that the number of coal sales varied from 100 to 200 per day.

The record shows that December 23, 1963, happened to be a busy day. Assuming that the men worked ten hours a day, if the sales amounted to 100, there would be an average of one every six minutes; if there were 200 sales, the average would be one every three minutes. The result of this computation shows why the men did not leave the tipple for long.

Lunch time appeared to be any time, but one official of the coal company testified it was any time from 11 to 1. Sanor had started to work December 18, 1963, and, on December 23, Capel asked Sanor to get his lunch at a restaurant about a mile away. Sanor started to go but could not complete the trip because his automobile had a flat tire. On that day Pettit had brought his own lunch and was eating it at the tipple when he learned that Sanor could not complete the trip. Pettit offered to go for Capel's lunch, but his automobile did not have a reverse gear, so Capel authorized Pettit to use his (Capel's) automobile.

Each man was given a half hour for lunch. He was not paid for this time. It appears from the record that, if a customer came for coal while the men were eating, the men were to stop eating and load coal. At times when Capel went for his own lunch he would only be gone five or ten minutes. He would telephone his order to the restaurant beforehand.

The record shows further that one of the coal company trucks had been wrecked on December 23, 1963. Pettit had visited the scene of the accident and had gathered up some tools from the truck. He had dishes and the tools in Capel's automobile when it was wrecked, at the time he lost his life. Such assiduous attention of this employee to his master's affair should be commended, not condemned.

It was developed in the record that, when Capel heard that his automobile was wrecked and Pettit killed, he waited an hour until his wife arrived to take over his duties. Sanor was at the tipple during this time.

The Industrial Commission rejected the claim of plaintiff. On appeal to the Common Pleas Court, a trial was had without a jury. The court found for the defendant. The plaintiff, feeling aggrieved, filed her notice of appeal and assigned the following errors:

1. The verdict and judgment is contrary to law and against the weight of the evidence.

2. The court erred in overruling this appellant's motion for new trial.

3. Other errors of law occurring at trial.

At this juncture it should be pointed out that, from the evidence, this was not a personal mission of Pettit. It did not benefit him but only the employer. It is apparent that lunch time was not the employee's time. The primary interest during this period was that of the employer's business and not that of the lunch of the employee. The employer knew of this condition and sanctioned it.

The employer benefited from this act of the employee. The fact that the employees took five or ten minutes to get their lunches at the restaurant and called before going, in addition to interrupting their lunch to load coal when customers came, merely proves that the workmen did not have a "lunch time" as such. It is apparent from the nature of employment and the working hours, that the employer benefited from the situation of having the men work without a regular noon hour and in eating lunch when time and work permitted. Undoubtedly this enabled the employer to carry on his business with fewer employees, and, therefore, such arrangement benefited the company.

These facts further show that the employer had the right of control of the employees actions during the so-called lunch period.

This case has presented the question: Was deceased killed in the course of his employment and arising out of it? We think so and believe that the question has been answered by the Supreme Court of Ohio.

In *Industrial Commission* v. *Davison*, 118 Ohio St. 180, the second and third paragraphs of the syllabus are as follows:

"2. An employee is in the course of his employment while he is performing the obligation of his contract of employment.

"3. An accident incident to or the result of an act done while in the course of his employment, which act is appropriate and helpful to the accomplishment of the purpose of his employment, is a hazard of such employment."

In that case, a Dean at Ohio Northern University was invited to deliver a high school commencement address and, while he was upon that errand, a member of the graduating class pinned a rose to his coat. A thorn from the rose pricked his finger, and this resulted in his death. It was held that the furtherance of the interests of Ohio Northern University, by his making contacts helpful to his employer, Ohio Northern University, justified the allowance of the claim for the injury sustained in the course of his employment and arising out of it.

In *Sebek* v. *Cleveland Graphite Bronze Co.*, 148 Ohio St. 693, Judge Zimmerman, speaking for the court, said, at page 697:

"Accordingly, an injury occurs in the course of and arises out of the employment, within the meaning of the Workmen's Compensation Act, if such injury followed as a natural incident of the work and *as a result of exposure occasioned by the nature, conditions or surroundings of employment.*" (Emphasis added.)

None of the foregoing essential facts being in controversy, the issue for the trial court was one of law only and required judgment for the plaintiff.

The judgment of the Common Pleas Court for the defendant is reversed, and final judgment is rendered for the plaintiff.

*Judgment reversed.*

YOUNGER, P. J., and GUERNSEY, J. (Presiding), concur.

YOUNGER, P. J., and GUERNSEY, J. (Presiding), of the Third Appellate District, and GRAY, J., of the Fourth Appellate District, sitting by designation in the Seventh Appellate District.