**STANBERGER v. MASON, Member, Board of Commissioners, et al.**

No. 7814.

United States Court of Appeals for the District of Columbia.

Decided Dec. 22, 1941.

Mr. David L. Riordan, of Washington, D. C. with whom Mr. J. Carroll Hayes, of Washington, D. C., was on the brief, for appellant.

Mr. Vernon E. West, Principal Asst. Corp. Counsel with whom Messrs. Richmond B. Keech, Corp. Counsel, and James W. Lauderdale, Asst. Corp. Counsel, all of Washington, D. C., were on the brief, for appellees Members of the Board of Commissioners of the District of Columbia and Dr. Warren Sager, Member of the Board of Police and Fire Surgeons.

Messrs. Edward M. Curran, U. S. Atty., and Bernard Margolius, Asst. U. S. Atty., both of Washington, D. C., filed a brief on behalf of the Comptroller General.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the District Court of the United States dismissing, after a hearing on the merits, the appellant's amended complaint. By that compaint the appellant, a policewoman member of the Metropolitan Police Department of the District of Columbia, sought an order compelling the Commissioners to approve sick leave and to pay money alleged to be due her on account thereof, and setting aside rulings of the District auditor and of the Comptroller General of the United States to the effect that she was not entitled to the money in question. Answers were filed by the Comptroller General and the Commissioners and after the hearing upon issues thus joined the trial

court made findings of fact, conclusions of law and an order in their favor.

Stated in substance and effect the findings of fact were as follows: On October 19, 1938, the appellant, who was on sick leave, was ordered by a member of the Board of Surgeons to report to the clinic for examination. She did so report at about 11 a. m., and after the examination the Police Surgeon "restored her to duty to report for active duty at 4 P. M. that afternoon." While "on her way home and crossing 14th and K Streets, N. W. on the 'go' signal a taxicab backed into the intersection and injured her; . . . she immediately arrested the driver . . . and charged him with a traffic violation for which he was convicted in the Police Court." As a result of the injuries thus sustained the appellant was relieved of police duties from October 25, 1938, until February 7, 1939. At the time of the accident she had already used more than thirty days sick leave for the calendar year 1938. She "received her salary for . . . November and December, 1938, but when she returned to active duty on February 7, 1939 her salary was thereafter withheld from her by the District . . . until she had worked out the total number of days she was on sick leave between October 25, 1938 and February 7, 1939."[1] The trial court held that under these facts and pertinent regulations printed below the appellant "was not on active duty at the time she sustained her injuries" and "did not receive her injuries as a direct consequence of the actual performance of duty," and that therefore she was not entitled to the relief prayed for.

The granting of sick leave and of pay while on such leave is governed by § 9 of Chapter XXXVIII of the Police Manual which contains the rules and regulations for the government of the Police Department, promulgated by the Commissioners under the authority of § 1 of the Act of February 28, 1901, 31 Stat. 819, as amended by the Act of June 8, 1906, 34 Stat. 221, D.C.Code (1929) tit. 20, § 472. Section 9 provides:

"The board of surgeons, acting as such board, or members thereof in their indi-

vidual capacity as such members, shall determine and shall be the only judges as to what amount of sick leave, if any, shall be granted any member of the force: *Provided, however,* That in no case will sick time be allowed any member of the force in excess of 30 days in any one calendar year, except when the same is in direct consequence of injury received (or disease contracted) in the actual performance of duty, or in case of a contagious disease where quarantine becomes necessary, and then only after the surgeon or surgeons have stated the cause of such absence, certified to its legality, recommended its allowance, and the same has been approved by the commissioners."

Pertinent also is §·4 of Chapter II of the Manual:

"Members of the force are held to be always on duty, although periodically relieved from the routine performance of it; are always subject to orders from the proper authorities and to call from citizens, and the fact that they may be technically *off duty* shall not be held as relieving them from the responsibility of taking proper police action in any matter coming to their attention requiring such action."

There is no contention that the facts found by the trial court were not supported by the evidence. We think that under those facts and the quoted regulations the order of the trial court was correct. Since the thirty day leave for the calendar year 1938 had been exhausted prior to the granting of the leave, salary for which is in issue, the case comes within the proviso of § 9 that "in no case will sick time be allowed . . . in excess of 30 days in any one calendar year except where the same is in direct consequence of injury received . . . in the *actual performance* of duty." (Italics supplied)

The appellant contends that, since the Police Surgeon had at 11 a. m. "restored her to duty to report for active duty at 4 P. M. that afternoon," the injury received "while on her way home" was one "received . . . in the actual performance of duty." She relies upon Proctor v.·Hoage, 1935, 65 App.D.C. 153, 81 F.2d 555, a case arising under the Longshoremen's and Harbor

[1] Although the findings of fact do not make it clear, it would appear therefrom that the appellant received her salary also for the period from October 25 to 31, 1938, and for the period January 1 to February 7, 1939. This uncertainty, however, does not affect the questions in the case.

Workers' Compensation Act,[2] holding that, although as a general rule injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise "out of and in the course of employment," [3] this rule is subject to exception to be established by agreement, express or implied. Assuming that this case is otherwise apt (it construes a differently purposed and phrased enactment from that involved in the case at bar), it is not applicable here because the instant case is not within the exception. That is to say there is nothing in the facts of the instant case from which there can be spelled out an agreement that going home from a Police Surgeon's examination under an order to report for active duty later in the day is an "actual performance of duty" in the sense in which that term is used in § 9 of Chapter XXXVIII of the Police Manual, read in the context of § 4 of Chapter II. These regulations contemplate, it is true, that a police officer is "always on duty" in that although relieved from routine performance of duty he is always subject to orders from proper authorities and to call from citizens. But by "actual performance of duty" in § 9 is obviously meant more than being subject to such orders and call. The clause "in direct consequence of injury received . . . in the actual performance of duty" is not ambiguous nor in conflict with other language in the regulations and it therefore need not be construed; and it becomes meaningless if under the appellant's contention a police officer is "in the actual performance of duty" at all times even though "off duty" but subject to orders and call. In brief, we think it apparent that the words "actual performance" are used in a literal sense; and they cannot be ignored. The appellant under the facts in the case was at the time she was injured on duty in the sense of being in service and subject to orders from proper authorities and to call from citizens, but she was not in the "actual performance of duty" within the normal meaning of those words.

■ The appellant complains that the distinctions taken by the trial court "split a fine hair . . . the wrong way," and this to the detriment of police morale. But the distinction drawn in the regulations between being on duty in the sense of being subject to order and to call and being in the actual performance of duty is not without substantial, rather than merely technical, reason. If that distinction be obliterated the number of injuries for which leave with pay would be grantable would be obviously much increased. But in this respect the intention of the Commissioners is controlling. It is they who are responsible for the morale of the police force and for the expenditure of the public funds. Therefore it is for them to make the rules which mark the limits of the classes of injuries for which sick leave on pay in excess of thirty days in any one calendar year will be allowed. Orderly administration of police affairs requires that there be rules, and when they are clear the courts must enforce them as they find them.

There is judicial recognition of the distinction between being in the service subject to order or call and being in the actual performance of duty. Heffernan v. State ex rel. Holloway, 1931, 38 Ohio App. 552, 177 N.E. 43. In that case the Board of Trustees of the Police Relief Fund had by rule provided for pensions for the child or children of a member of the police department who "died either in actual service, or while on the pension roll." A policeman in the service was shot and killed while off duty. It was contended that his child was not entitled to a pension because the officer was not in the *performance* of duty at the time he was killed. The court held otherwise and in so doing recognized the distinction mentioned, saying:

"The rules of the police department require a policeman to devote all of his time to the service; of necessity he is allotted certain periods for rest and recuperation, during which time he is off duty, but he is subject to call at all times; during the time allotted for resting so as to be able to return to duty, is he not in actual service, within the meaning of said rule 19?

"After careful consideration, we are of the opinion that the trial court was right in holding that said decedent was in actual service. Any other construction of the language used would limit pensions to cases

---

[2] 44 Stat. 1424, 33 U.S.C.A. §§ 901–950, made applicable to the District of Columbia, 45 Stat. 600, D.C.Code (1929) tit. 19, c. 2, §§ 11, 12, 33 U.S.C.A. § 901 note.

[3] 44 Stat. 1425, 33 U.S.C.A. § 902(2).

of death of a policeman while in the performance of duty; and, as death from natural causes almost never occurs while on duty, pensions would in most cases be confined to cases of death by violence—cases where death was the result of the service; if it had been the intention of those who made said rules to so limit the benefits from said fund, it would have been easy to have used language clearly indicating said intention, such as 'while in the performance of his official duty.' . . ." [177 N.E. at page 44.]

In that case the authorities had phrased the rule with the intention of allowing a pension for the death of a policeman in service, whether in the performance of duty or not. In the instant case the Commissioners have chosen to limit sick leave with pay in excess of thirty days in one calendar year to instances where the leave is in direct consequence of injury received in the actual performance of duty.

■ In respect of the relief asked against the Comptroller General: In the instant case the Comptroller General reached a correct result. Moreover, while the courts must decide cases according to the law as they find it, notwithstanding contrary decisions of the Comptroller General, they do not set aside his decisions in the sense of requiring their recall. Miguel v. McCarl, 1934, 291 U.S. 442, 54 S.Ct. 465, 78 L.Ed. 901.

The appellant raises no question, if she is not entitled to the money herein sought, as to the propriety of the method used by the Commissioners to reimburse the District, after they had paid her notwithstanding the regulations.

Affirmed.